NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.   A-4641-12T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

HUGO FIERRO,

     Defendant-Appellant.

_____

<div style="border: 1px solid black;">

**APPROVED FOR PUBLICATION**

**January 6, 2015**

**APPELLATE DIVISION**

</div>

Submitted November 13, 2014 — Decided January 6, 2015

Before Judges Ashrafi, Kennedy, and
O'Connor.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Indictment
No. 12-05-1305.

Fusco & Macaluso, L.L.C., attorneys for
appellant (Amie E. DiCola, on the brief).

Carolyn A. Murray, Acting Essex County
Prosecutor, attorney for respondent (Andrew
R. Burroughs, Special Deputy Attorney
General/Acting Assistant Prosecutor, of
counsel and on the brief).

The opinion of the court was delivered by

ASHRAFI, J.A.D.

Defendant Hugo Fierro, formerly a City of Newark police officer, appeals from his conviction by a jury for simple and aggravated assault and for official misconduct. We affirm.

In May 2012, defendant was indicted by a grand jury on five counts: (Count One) second-degree official misconduct, N.J.S.A. 2C:30-2; (Count Two) third-degree aggravated assault causing significant bodily injury, N.J.S.A. 2C:12-1(b)(7); (Count Three) third-degree aggravated assault with a deadly weapon, N.J.S.A. 2C:12-1(b)(2); (Count Four) fourth-degree aggravated assault by pointing a handgun at another person, N.J.S.A. 2C:12-1(b)(4); and (Count Five) second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a).

Defendant was tried before a jury in February 2013. The jury acquitted him of aggravated assault as charged in the second count, which required proof that he caused or attempted to cause significant bodily injury, and it acquitted him of the fourth and fifth counts charging the pointing and unlawful possession of his handgun. The jury found defendant guilty of simple assault as a lesser-included disorderly persons offense of the second count of the indictment, and guilty of third-degree aggravated assault with a deadly weapon and second-degree official misconduct.

On April 29, 2013, the court sentenced defendant to five years imprisonment without parole. The five-year prison term was the minimum sentence required under a statute enacted in 2007 that imposes mandatory sentences without parole if a public official commits certain crimes, including official misconduct, and the crime "involves or touches such office or employment." N.J.S.A. 2C:43-6.5.[1]

The evidence at the trial showed the following facts. Defendant was born in Ecuador and is a naturalized citizen of the United States. He was a long-time resident of Newark and an eleven-year veteran of the Newark Police Department. While off-duty on the night of May 7 into May 8, 2011, defendant and his wife went to dinner, followed by several hours of dancing. After the dancing, they went to a bar in the Ironbound section of Newark for coffee and a nightcap.

When they arrived outside the bar, defendant saw several men drinking openly on the sidewalk. He went toward the men and

---

[1] The judgment of conviction contains an error. It was the court's intention to sentence defendant to five years imprisonment without parole on Count One charging official misconduct, three years imprisonment for aggravated assault with a deadly weapon as charged in Count Three, and six months imprisonment for simple assault, the lesser-included offense of Count Two. The sentences run concurrently. The judgment of conviction entered on April 30, 2013, mistakenly reverses the sentences on Counts Two and Three. We remand to the trial court for correction of the judgment of conviction.

ordered them to disperse.  He then saw a man swaying and stumbling near the entrance of the bar.  Defendant identified himself as a police officer and spoke to the man for several minutes.  He then took the man by the arm and led him toward the street for the purpose of getting a taxi to take the man home.

As defendant was talking with the intoxicated man in an animated manner, another man approached.  We will refer to the other man as the victim of the assault by defendant.  The versions of defendant and the victim differ regarding what occurred next.

The victim testified in Spanish at defendant's trial that he had spent the night at someone's house watching boxing matches on television.  At about 1:45 a.m., he was on his way to the same bar to which defendant and his wife were going.  He testified that he was not drunk.  As he walked from his car toward the bar, he was holding his car keys tied to a string.  He saw two men talking in the middle of the sidewalk.  When he got closer, one of the men, later identified as defendant, yelled to him "what's your problem?  What's your problem?"

According to the victim, defendant then tried to grab him by the front of his shirt, and the victim pushed defendant's hand away.  As defendant tried to grab the victim a second time, the victim saw defendant take a handgun from his side.

Defendant said he was a police officer, and the victim began backing away. Defendant came after the victim, pushed him in the chest, and then hit him in the face with the barrel of the gun he was holding. The victim turned and ran towards his home, his nose bleeding.

At home, the victim told his wife what happened. She washed off his face and gave him medicine to ease the pain of his swollen nose. He did not seek additional medical treatment, and he threw out the shirt on which he had bled. The next day, the victim and his wife went to the bar and learned that the man who had struck him was in fact a police officer. They went to the police station and reported the incident.

Police investigators testified that they showed the victim a photo array several months after the incident and he selected defendant's photograph as possibly the man who had struck him, but he was not positive of the identification. However, the incident had been recorded by a stationary outdoor surveillance camera, and defendant was identified positively as the officer who had struck the victim.

In the defense case, defendant first called a police lieutenant who had taken the report of the incident from the victim and his wife the day after it happened. The lieutenant testified that he formally reported the matter to the Newark

Police Department's internal affairs unit. He also testified that he saw no visible sign of injury to the victim's nose or face.

Defendant testified that his actions that night were justified. He said he was trying to help the intoxicated man, and the victim interfered and would not stand back. The victim continued approaching when defendant identified himself as a police officer and was making derogatory comments to defendant. According to defendant, the victim was yelling "f*** you, you're not a cop," and called defendant "extranjeros," which is an insulting term referring to a foreigner. Defendant testified that he held out his hand to create space between himself and the victim. The victim slapped defendant's hand away twice.

Defendant believed the victim was intoxicated and might be armed. He noticed a shiny object attached to a string in the victim's hand and believed it could possibly be a knife or a small gun. Defendant drew his gun and pushed the victim "hard in the chest with his weapon hand," at which point the victim turned and ran away. Defendant admitted he pushed the victim three times before striking him with the hand in which he was holding his gun. He also conceded that the victim never responded with force during the incident.

The soundless surveillance film revealed the following. When defendant first arrived outside the bar, his attention was drawn to something outside the range of the surveillance camera. He became actively involved with other people on the sidewalk and in the general area of the bar. He seemed to be directing another man toward the street and ordering him to move away. He then returned in the direction of the bar and spoke for more than a minute with an unidentified man near the entrance, who may have been intoxicated. As the two were speaking on the sidewalk, the victim approached.

Defendant's encounter with the victim lasted about twenty seconds. The video shows the victim walking toward defendant, who is in the middle of the sidewalk holding the unidentified man's arm with his right hand. The victim veers to one side as he apparently sees the two men in his path. While the victim is still a car-length away from defendant and the unidentified man, defendant gestures toward him with his hand and appears to say something to the victim. The victim then attempts to walk around defendant toward the entrance of the bar, but passes close to defendant and the unidentified man. The video does not show whether the victim is speaking to defendant, although his face is turned toward defendant as he walks by slowly.

Defendant turns quickly and reaches for the victim with his right hand. The victim swats defendant's hand away. In response, defendant steps away from the unidentified man and hits the victim in the chest with his left hand while at the same time removing his gun from his side with his right hand. The victim steps back. His arms are at or near his sides. A long band (apparently attached to the victim's car keys) can be seen dangling from one hand of the victim. His other hand appears to hold nothing. The victim does not display any physical aggression. Both defendant and the victim appear to be speaking toward each other.

At that point, defendant moves toward the victim and quickly hits him again in the chest with his left hand. This causes the victim to take another step or two back. Defendant then swings at the victim with his right hand, in which he is holding his gun. Although not clear on the video, it appears that defendant's right hand strikes the victim on the bottom half of his face or in the neck area. The victim immediately begins to run. Defendant walks after him still holding his gun.

Defendant's wife then goes into the bar and comes out a short time later accompanied by two men. The three walk out of view in the direction that the victim and defendant went. Less than a minute later, they return with defendant, who is talking

A-4641-12T4

to the two men in a friendly manner.  All four walk into the bar.

At the trial, defendant testified that he chased the victim for nearly a minute before losing him.  He stated he did not call for police backup because his wife had his cell phone.  As he walked back toward the bar, he was met by his wife and also a police sergeant and a lieutenant that he knew.

The two superior officers testified in the State's case at the trial that they had been dining inside the bar when defendant's wife came in and told them something was happening that involved defendant.  They were acquainted with defendant from their police duties but did not socialize with him.  Neither saw what happened outside during the altercation.  When they came out of the bar and met defendant, he told them everything was all right and that "he handled the situation."  They were not aware that night that defendant had drawn his gun during the incident.

Defendant knew that police department rules required him to prepare an incident report and a use-of-force form because he had drawn and used his gun during the incident.  He testified he did not fill out the forms because the victim outran him and he did not think it would be helpful to the situation.

A-4641-12T4

As stated previously, the jury convicted defendant of some of the charges in the indictment and acquitted him of others.

On appeal, defendant argues:

POINT I
THE COURT SHOULD REVERSE OFFICER FIERRO'S CONVICTION BECAUSE THE TRIAL COURT ERRONEOUSLY SHIFTED THE BURDEN OF PROOF UPON THE DEFENDANT WHEN IT REQUIRED OFFICER FIERRO TO TESTIFY BEFORE IT WOULD PERMIT A USE OF FORCE INSTRUCTION TO BE GIVEN TO THE JURY.

POINT II
THE COURT SHOULD REVERSE OFFICER FIERRO'S CONVICTION BECAUSE THE JURY'S VERDICT IS FATALLY FLAWED SINCE IT NEGATES THE ESSENTIAL ELEMENTS OF AGGRAVATED ASSAULT WITH A DEADLY WEAPON.

POINT III
THE COURT SHOULD REVERSE OFFICER FIERRO'S CONVICTION BECAUSE THE VERDICT IS AGAINST THE WEIGHT OF THE EVIDENCE.

Defendant argues first that the trial court erroneously denied his attorney's request at the close of the State's case-in-chief to include a use-of-force instruction pursuant to N.J.S.A. 2C:3-7(a) as part of the court's final charge to the jury. See Model Jury Charge (Criminal), "Use of Force in Law Enforcement" (1983). He contends the court's erroneous ruling "compelled [him] to present evidence at trial" and thus shifted the burden of proof to him in defense of the criminal charges, which is a violation of his constitutional right to due process.

A-4641-12T4

In a criminal prosecution, the State bears the burden of proving all elements of the crimes charged beyond a reasonable doubt, and the defendant is not obligated to present witnesses or testify to establish a defense. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073, 25 L. Ed. 2d 368, 375 (1970); Speiser v. Randall, 357 U.S. 513, 525-26, 78 S. Ct. 1332, 1342, 2 L. Ed. 2d 1460, 1472-73 (1958); State v. Anderson, 127 N.J. 191, 200-01 (1992). While a defendant bears the burden of proof with regard to an affirmative defense, such a defense can be proven with evidence presented during the State's case. State v. Chiarello, 69 N.J. Super. 479, 498 (App. Div. 1961), certif. denied, 36 N.J. 301 (1962).

After the State completed presentation of its case, the trial judge tentatively denied defense counsel's request for a jury instruction in accordance with N.J.S.A. 2C:3-7(a) that defendant could use reasonable force to perform his police duties. The judge ruled that a use-of-force defense was not supported by the evidence presented up to that point in the trial because the record did not contain any evidence of a necessary element of that defense — that defendant was making an arrest. The judge offered to instruct the jury on self-defense, but not use-of-force by a police officer unless evidence was presented that defendant was attempting to make an arrest. The

11

judge clearly indicated that he was "basing [the ruling] on the facts that have been submitted so far in this case." He added: "If something else develops I'll revisit it if [defense counsel] ask[s] me. As of right now, use of force is not involved in this case."

Defendant then called witnesses and testified himself, presenting his version of what had occurred. At the close of defendant's case, the judge ruled that the foundation for a use-of-force instruction had been presented in evidence, and he instructed the jury accordingly before the deliberations began. Defendant has not argued that the instruction that the judge gave was erroneous or inadequate.

N.J.S.A. 2C:3-7(a) provides that a police officer's use of force in the execution of his public duty "is justifiable when the [officer] is making . . . an arrest and . . . reasonably believes that such force is immediately necessary to effect a lawful arrest." Defendant claims he was entitled to a jury instruction based on the statute without the need to testify regarding his version of the incident.

When a defendant requests a jury instruction on a defense in the case, the court should give such an instruction "if . . . there is a rational basis in the record to give it." State v. Walker, 203 N.J. 73, 87 (2010); accord State v. Kelly, 97 N.J.

178, 200 (1984); State v. Blanks, 313 N.J. Super. 55, 69-70 (App. Div. 1998). However, where a defendant fails to point to any facts that provide a rational basis from which a jury could infer that his actions were justified, the trial court may properly decline to instruct the jury as to that defense of justification. State v. Josephs, 174 N.J. 44, 102-03 (2002).

Here, the trial judge correctly determined that no rational basis had been provided to instruct the jury on the use of force by a police officer at the end of the State's case-in-chief. At that point, there was no evidence before the jury that defendant was attempting to arrest either the victim or the unidentified man who appeared to be intoxicated.

Defendant argues incorrectly that the judge refused to give the jury instruction he requested unless he testified, thus violating his constitutional right to remain silent at his trial. The judge did not impose a condition that defendant testify. He simply ruled that, at the time defense counsel made the request, foundational evidence to support the jury instruction had not been produced in the trial record. That ruling was correct.

Neither the testimony of the State's witnesses nor the surveillance video indicated that defendant was arresting the victim when he struck him with his gun. Rather, the State's

evidence indicated an off-duty altercation between defendant and the victim. The video showed that defendant reacted immediately to the victim's approach and attempted to push him away. Defendant was not attempting to apprehend or subdue the victim. Nor was he arresting the allegedly intoxicated man.

Within seconds of the victim's approach to the area, and without the victim showing any physical aggression, defendant drew his gun and pushed the victim. The victim was backing away. The fact that at some point defendant identified himself as a police officer did not lend support to his contention that he was attempting to make an arrest. Nor did defendant submit a use-of-force report to the police department indicating that he was attempting to make an arrest when he drew his gun and struck the victim.

Defendant contends the court "could have found that [defendant] was in fact acting in an official capacity when he []drew his weapon" and that he was "executi[ng] his public duty" to clear the sidewalk of persons who were causing a disturbance. However, without foundational evidence supporting defendant's contention that the victim was interfering with his police duties and causing a disturbance, and that defendant was trying to arrest him, a use-of-force charge under the statute was not warranted. The trial judge correctly declined to give the

A-4641-12T4

requested charge at the end of the State's case-in-chief and waited until an evidential foundation had been presented to the jury in the defense case.

Defendant argues next that the jury's split verdict shows it did not understand the elements of aggravated assault with a deadly weapon. The jury acquitted defendant of possession of a weapon for an unlawful purpose and of aggravated assault by pointing a handgun at another person, and yet it convicted him of aggravated assault with a deadly weapon. Defendant claims the acquittals show the jury did not find all the essential elements of aggravated assault with a deadly weapon.

"Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment." Dunn v. United States, 284 U.S. 390, 393, 52 S. Ct. 189, 190, 76 L. Ed. 356, 358 (1932). A jury verdict, even an inconsistent one, is upheld on appeal if the evidence is sufficient to establish guilt on the count of conviction. United States v. Powell, 469 U.S. 57, 67, 105 S. Ct. 471, 478, 83 L. Ed. 2d 461, 470 (1984). The Supreme Court of New Jersey has adopted the Dunn/Powell rule of law where a defendant claims an inconsistent verdict. State v. Banko, 182 N.J. 44, 54 (2004). Reviewing courts may not speculate on whether a jury verdict that seems inconsistent was the result of a mistake,

compromise, or lenity. State v. Muhammad, 182 N.J. 551, 578 (2005).

Relying on an unpublished opinion of this court,[2] defendant contends he is not arguing that the verdict was inconsistent but that it demonstrates the jury did not understand the law and the necessary elements of the aggravated assault charge.

The charge of aggravated assault by pointing a handgun required the State to prove that defendant "[k]nowingly under circumstances manifesting extreme indifference to the value of human life point[ed] a firearm . . . at or in the direction of another . . . ." N.J.S.A. 2C:12-1(b)(4). The jury saw the surveillance video and could determine from it that there was insufficient evidence that defendant pointed the gun at the victim.

With respect to possession of the weapon for an unlawful purpose, the State was required to prove that defendant had "in his possession any firearm with a purpose to use it unlawfully against the person or property of another . . . ." N.J.S.A. 2C:39-4(a)(1). The jury heard testimony that defendant was legally permitted to carry his gun when he was off-duty. It could base its acquittal of defendant on that testimony as well

---

[2] Pursuant to Rule 1:36-3, an unpublished opinion does not constitute precedent and is not binding upon any court.

A-4641-12T4

as the absence of evidence other than the assault itself that defendant had an unlawful purpose in possessing the gun.

On the other hand, the crime of aggravated assault with a deadly weapon required the State to prove that defendant purposely or knowingly caused or attempted to cause "bodily injury to another with a deadly weapon." N.J.S.A. 2C:12-1(b)(2). The video showed defendant removing the gun from his clothing and, without visible provocation, hitting the victim with the gun. The victim testified that the blow landed on his face, causing his nose to bleed and to swell.

The incident happened quickly, and the jury could have determined that defendant was in lawful possession of his service weapon but that his use of it to strike the victim in the face was an unjustified assault with a deadly weapon. N.J.S.A. 2C:11-1(c) provides:

> "Deadly weapon" means any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used, is known to be capable of producing death or serious bodily injury or which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury.

The fact that defendant did not fire a shot or point the gun at the victim did not preclude the jury from determining that defendant's actions could cause serious injury and that the

handgun, a two-and-a-half pound metal object, constituted a deadly weapon. See State v. Burford, 163 N.J. 16, 18 (2000) (the term deadly weapon includes a "class of objects having a wide variety of lawful uses but . . . which may take on the character of a deadly weapon depending on the circumstances" and the defendant's intention to use the object as a weapon (internal quotation marks and citations omitted)). There was sufficient evidence for the jury to find defendant guilty of aggravated assault with a deadly weapon because of the manner of his use of the gun to strike the victim.

Finally, defendant argues that we should set aside the jury's verdict because it was against the weight of the evidence. He asserts that the victim's testimony was not credible in denying that he provoked defendant or that he suffered injury to his nose.

We do not consider a weight-of-the-evidence argument on appeal unless the appellant moved in the trial court for a new trial on that ground. R. 2:10-1; State v. Perry, 128 N.J. Super. 188, 190 (App. Div. 1973), aff'd, 65 N.J. 45 (1974). Defendant has not provided a record to us indicating that he made such a post-trial motion. His argument is not cognizable on appeal.

A-4641-12T4

Moreover, it lacks merit. A rational jury could conclude beyond a reasonable doubt from the video evidence alone that defendant unjustifiably struck the victim with the hand in which he held his handgun. An attempt to cause injury satisfies the assault statutes on which defendant was convicted. N.J.S.A. 2C:12-1(a)(1), (b)(2). The jury had the opportunity to observe the witnesses' testimony first-hand and the surveillance recording, and it determined beyond a reasonable doubt that defendant was guilty of the assault charges.

The jury also could reasonably conclude that defendant's actions constituted an unauthorized exercise of his official functions as a police officer, that defendant knew his actions were unauthorized, and that his purpose was to injure another person. Those findings support a guilty verdict on the charge of official misconduct. N.J.S.A. 2C:30-2.

Affirmed. Remanded for correction of the judgment of conviction. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4641-12T4