**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4620-16T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MALIK SINGER,

    Defendant-Appellant.

_____

> Submitted October 3, 2018 – Decided October 18, 2018
>
> Before Judges Fuentes and Vernoia.
>
> On appeal from Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 08-06-0398.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Monique D. Moyse, Designated Counsel, on the brief).
>
> Michael H. Robertson, Somerset County Prosecutor, attorney for respondent (Lauren R. Casale, Assistant Prosecutor, of counsel and on the brief).
>
> Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Malik Singer appeals from an order denying his post-conviction relief (PCR) petition without an evidentiary hearing. We affirm.

I.

We described the facts underlying the criminal charges against defendant in our opinion on his direct appeal, State v. Malik Singer, No. A-5270-11 (App. Div. Aug. 13, 2015) (slip op. at 5-28) and briefly summarize the pertinent facts here.[1] In 2008, defendant was charged in an indictment (No. 08-06-0398) with first-degree murder of Michael Love, N.J.S.A. 2C:11-3(a)(1) and (2), first-degree conspiracy to commit murder, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3, and second-degree possession of a handgun for unlawful purposes, N.J.S.A. 2C:39-4(a). Codefendants Sa'id Kendrick and James Miller were charged in the indictment with the same offenses. Two years later, defendant was charged in a separate indictment (No. 10-03-0168) with three counts of first-degree conspiracy to commit murder of three potential prosecution witnesses, N.J.S.A.

---

[1] We limit our summary of the facts to those pertinent to the three charges related to the murder of Michael Love. As is explained infra, defendant was also charged and convicted of offenses that occurred after Love's murder, including three counts of conspiracy to murder three potential prosecution witnesses and three counts of conspiracy to commit witness retaliation. We do not summarize the facts related to those crimes because they are not relevant to any issues raised by defendant on appeal.

A-4620-16T1

2C:5-2 and N.J.S.A. 2C:11-2, and three counts of second-degree conspiracy to commit witness retaliation, N.J.S.A. 2C:28-5(b). The indictments were consolidated for trial.

The trial evidence showed that Love's body was found on the morning of May 11, 2008, outside of the Ten's Enough social club in Franklin Township. Police investigated, and it was later determined Love died from a single gunshot wound to the head.

Detectives developed information causing them to identify a "James Miller" and another individual with the street name or alias of "Face" as possible suspects. The police also determined the suspects may have been using a particular cellphone, which the Somerset County Prosecutor's Office determined was then located in Stamford, Connecticut and belonged to Anne Marie Pettigrew, who the police believed was associated with Kendrick. Officers traveled to the location of the phone in Connecticut, where they found Kendrick in possession of a handgun.

On May 13, 2008, the police set up surveillance of the home of a woman who was reputed to be the mother of defendant's child. The police observed a small gray car operated by a female driver with defendant in the passenger seat. The police approached the vehicle and yelled, "Face, get down on the ground!"

A-4620-16T1

and, in response, defendant immediately got down. Defendant was handcuffed and said to the officers, "You homicide?" The police told defendant he was arrested in connection with "the shooting the other night."

Police administered Miranda[2] warnings and interrogated defendant. He denied his nickname was "Face," but also referred to himself as "Face." Defendant volunteered, "I didn't kill nobody," and denied shooting Love or being at the Ten's Enough club on the evening before Love's body was found. He claimed he was with his girlfriend at a hotel during that evening. He admitted that on the night prior to Love's murder he had possession of the handgun that had been recovered from Kendrick, but explained he returned the handgun to Kendrick prior to the shooting. Defendant also said Kendrick's street name was "Face" and that Kendrick admitted he shot Love.

Ballistics evidence showed the bullet that caused Love's death was fired from the gun the police recovered from Kendrick in Connecticut. Kendrick testified at defendant's trial that, on the evening before Love's murder, defendant was involved in a bar fight and then asked to borrow Kendrick's gun. According to Kendrick, defendant returned to the bar, pointed the gun at the bar's patrons and left. Kendrick testified he was using his mother's cellphone that evening

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

and loaned it to defendant, who used the phone to call for a ride. Kendrick explained that he saw a gray or silver Honda Accord arrive. Defendant entered the vehicle and the female driver then drove away.

Miller testified his street name was "Brim" and defendant's street name was "Face." He stated that, on the evening before Love was murdered, he was at the Ten's Enough club and had an argument with his child's mother, LaToya Singleton, because she was drinking with Love.

Singleton testified that she had spent time with Love at the club during the evening before Love's murder, and he gave her money as a present. She gave the money to her friend Aisha Williams to hold so Miller would not know Love gave her money.

Singleton explained that on the evening of Love's murder, she arrived at the club with Miller, Williams and Kimberly Simonson. Williams testified that Miller accused Singleton of "lap dancing" on Love, and that Miller and Singleton then argued.

Williams described that as the result of an argument among others at the club, she went outside and saw Miller, defendant and Love. Defendant stood behind Love. Williams "saw defendant holding a gun, pointing it at Love's head,

and pulling the trigger." On May 12, 2008, Williams selected defendant's photograph from a photo array and identified him as the shooter.

Miller told the jury that he went to the Ten's Enough club on May 10, 2008, soon after 10:30 p.m. and became involved in an argument between Simonson and her boyfriend, Willie Pitts. He called defendant to come to the club as "security" or "back up" because he was concerned about Pitts. When defendant arrived, Miller was outside of the club. He told defendant he "would take care of Will[ie Pitts]" and to "back up Mr. Love." Miller explained that Love was the person with whom his girlfriend, Singleton, had danced the previous evening. Miller pointed out Love and directed defendant to go after him. Although he denied knowing defendant had a gun, or that he saw defendant shoot Love, Miller testified defendant went over to where Love was standing. Miller then heard a gunshot.

Kendrick testified he went to the club and waited outside in a car while his cousin attempted to gain access to the club. As he sat in the parked car, he saw defendant, who was a close friend he knew by the name "Face," standing outside of the club. He saw defendant raise his arm and fire a gunshot. He testified he saw the victim, Love, fall. Kendrick also explained that defendant ran to a Honda Accord and got in the vehicle. As the Accord pulled away, it

6

stopped by Kendrick's car, at which time defendant returned Kendrick's mother's cellphone he had borrowed the previous evening. Kendrick testified defendant gave him a book bag the following day that contained the gun Kendrick had given defendant. Kendrick said that in order to "help [defendant] out," he took the book bag knowing it contained the gun used to murder Love.

The evidence also showed defendant made self-incriminatory admissions to his fellow inmates during his pretrial detention. Defendant admitted to four witnesses that he shot Love. He told a witness that once he arrived at the club, a friend pointed out Love and he shot him. He told two witnesses that he immediately fled from the club after shooting Love, and attempted to establish an alibi by quickly traveling to a gas station he knew had surveillance cameras. Defendant presented evidence showing his presence at a gas station, his movements amongst various locations and cellphone data to establish he was not at the Ten's Enough club when Love was murdered.

The jury was unable to reach a verdict on the charges that defendant murdered Love and possessed a handgun for unlawful purposes. The jury convicted defendant of conspiracy to commit Love's murder. Defendant was also convicted of the three counts of conspiracy to murder three potential

prosecution witnesses and three counts of conspiracy to commit witness retaliation charged in the second indictment.

On the conviction for first-degree conspiracy to commit murder, the court sentenced defendant to a twenty-five-year discretionary extended term, N.J.S.A. 2C:44-3(a), subject to the requirements of the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The court merged defendant's convictions for the three counts of conspiracy to commit witness retaliation with his convictions for the three counts of conspiracy to commit the murders of the witnesses, and imposed an aggregate fifteen-year sentence subject to NERA, to be served consecutive to the sentence on his conviction for conspiracy to murder Love.

We affirmed defendant's conviction and sentence on direct appeal. Singer, slip op. at 37. The Supreme Court denied defendant's petition for certification. State v. Singer, 224 N.J. 123 (2016).

In March 2016, defendant filed a verified pro se PCR petition, asserting the following facts in support of his claim:

> [inconsistency] within the witness statements, evidentiary hearing, conspiracy doesn't support the conviction, there wasn't any evidence of a conspiracy to commit murder to sustain a conviction. Ineffective assistance of counsel claims, on post-conviction review, many other aspect[s] of my pre-trial proceedings in

8

which my previous representation neglected to protect my rights and to submit proper motions, that would have exonerated me.

Defendant's assigned PCR counsel filed an Amended Verified PCR Petition pursuant to R. 3:22. Defendant argued that "trial and appellate counsel were ineffective for the reasons set forth" in an accompanying brief. PCR counsel's brief asserted trial counsel was ineffective by "failing to call favorable witnesses" and by failing to argue defendant's convictions were against the weight of the evidence. The brief also asserted defendant's appellate counsel was ineffective because she did not claim on direct appeal that defendant's trial counsel was ineffective by failing to call favorable witnesses and argue defendant's convictions were against the weight of the evidence.

After hearing argument on defendant's PCR petition, the court issued a written decision finding defendant failed to sustain his burden of establishing a prima facie case that his trial and appellate counsels' performances were deficient or that he suffered prejudice as a result of any of their purported errors. The court entered an order denying the PCR petition without an evidentiary hearing. This appeal followed.

Defendant's counsel presents the following arguments for our consideration:

POINT ONE

[DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIM THAT HIS ATTORNEYS RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO INVESTIGATE AND PRESENT AN ADEQUATE ALIBI DEFENSE OR RAISE THESE ISSUES ON DIRECT APPEAL.

POINT TWO

[DEFENDANT'S] CONVICTION FOR CONSPIRACY TO COMMIT MURDER IS AGAINST THE WEIGHT OF THE EVIDENCE.

In his pro se letter brief, defendant makes the following arguments:

POINT I

[DEFENDANT'S] REMEDIAL ASSISTANCE OF COUNSEL AT THE TRIAL [LED] TO A GRAVE DENIAL OF THE U.S. CONST. 6TH AMENDMENT & N.J. CONST. ART. 1, PARA. 9 & 10, TO A FAIR TRIAL TO PROVE HIS ACTUAL INNOCENCE.

POINT II

[DEFENDANT'S] INITIAL APPELLATE COUNSEL AND THE PCR COUNSEL REMEDIAL ASSISTANCE OF COUNSEL AS WELL [DENIED] APPELLANT THE RIGHT TO FAIRLY AND ADEQUATELY CHALLENGE THE CRIMINAL ALLEGATIONS TO PROVE HIS ACTUAL INNOCENCE CONTRARY TO THE U.S. CONST. 6TH AMENDMENT & N.J. CONST. ART. 1, 9 & 10.

A. NEW JERSEY CITIZEN WAS DENIED THEIR [sic] U.S. CONST. 1ST. AMENDMENT RIGHT TO WITNESSING [DEFENDANT] TO HAVE A FAIR PUBLIC TRIAL, WHERE THE PUBLIC CITIZEN OF NEW JERSEY WOULD CONTINUE TO MAINTAIN CONFIDENCE AND INTEGRITY IN THE JUDICIAL SYSTEM PROCESS.

POINT III

[THE] PROSECUTOR KNOWINGLY USED PERJURED TESTIMONY TO OBTAIN CONVICTION DENYING DEFENDANT'S RIGHT TO A FAIR TRIAL, DUE PROCESS AND IN VIOLATION OF THE 5TH AMENDMENT TO THE UNITED STATES CONSTITUTION.

A. PROSECUTORIAL MISCONDUCT.

B. INSUFFICIENT EVIDENCE.

POINT IV

[THE] JURY'S VERDICT AND [DEFENDANT'S] CONVICTION [WERE] AGAINST THE WEIGHT OF THE EVIDENCE IN VIOLATION OF THE FOURTEENTH AMENDMENT.

POINT V

[THE] JUDGE FAILED DUTY AS IMPARTIAL TRIBUNAL VIOLATING DEFENDANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL.

A.  Actual Killer Given Deal.

B.  Proof of Fact.

11

[POINT VI]

CONSTITUTIONAL ERROR AND WRONGFUL CONVICTION

A. The Lack of Full Disclosure.

B. The Investigating Detective Imputed Knowledge to Prosecutor.

C. The Materiality Of The Undisclosed Evidence.

D. The Prejudice Of The Non-Disclosure.

E. The Prosecutorial Misconduct.

## II.

We review the legal conclusions of a PCR court de novo. State v. Harris, 181 N.J. 391, 419 (2004) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). The de novo standard of review applies to mixed questions of fact and law. Id. at 420. Where an evidentiary hearing has not been held, it is within our authority "to conduct a de novo review of both the factual findings and legal conclusions of the PCR court." Id. at 421. That standard applies here.

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee that a defendant in a criminal proceeding has the right to the assistance of counsel in his defense. The

12

right to counsel includes "the right to the effective assistance of counsel." State v. Nash, 212 N.J. 518, 541 (2013) (quoting Strickland v. Washington, 466 U.S. 668, 686 (1984)).

In Strickland, the Court established a two-part test, later adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987), to determine whether a defendant has been deprived of the effective assistance of counsel. Strickland, 466 U.S. at 687. Under the first prong of the Strickland standard, a petitioner must show that counsel's performance was deficient. It must be demonstrated that counsel's handling of the matter "fell below an objective standard of reasonableness," id. at 688, and that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," id. at 687.

Under the second prong of the Strickland standard, a defendant "must show that the deficient performance prejudiced the defense." Ibid. A defendant must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A petitioner must establish both prongs of the Strickland standard in order to obtain a reversal of the challenged conviction. Id. at 687; Nash, 212 N.J. at 542;

A-4620-16T1

Fritz, 105 N.J. at 52. A failure to satisfy either prong of the Strickland standard requires the denial of a petition for PCR. Strickland, 466 U.S. at 700.

Defendant first contends the PCR court erred by failing to find that he established a prima facie claim of ineffective assistance of trial counsel based on counsel's failure to conduct an investigation and concomitant failure to present an adequate alibi defense. We find no merit to defendant's claim.

"Bald assertions" are insufficient to sustain a defendant's burden of establishing a prima facie case of ineffective assistance under the Strickland standard. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). PCR petitions must be "accompanied by an affidavit or certification by defendant, or by others, setting forth with particularity," State v. Jones, 219 N.J. 298, 312 (2014), "facts sufficient to demonstrate counsel's alleged substandard performance," ibid. (quoting State v. Porter, 216 N.J. 343, 355 (2013)). Although a "[f]ailure to investigate an alibi defense is a serious deficiency that can result in the reversal of a conviction," Porter, 216 N.J. 343, 353 (2013), where, as here, a defendant "claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of

14

the affiant or the person making the certification," ibid. (quoting Cummings, 321 N.J. Super. at 170).

The PCR court correctly determined defendant failed to establish a prima facie case that his trial counsel was ineffective by failing to conduct an adequate investigation and call alibi witnesses. Defendant's initial and amended PCR petitions, and other submissions, are untethered to any affidavits or certifications describing what the investigation he claims his trial counsel failed to complete would have revealed or the manner in which particular witnesses would have supported an alibi defense.[3] Cf. State v. Pierre, 223 N.J. 560, 583 (2015) (finding trial counsel's performance deficient where "counsel chose to forego evidence that could have reinforced [the defendant's] alibi"). Defendant

---

[3] Defendant's initial and amended petitions do not identify the purported alibi witnesses trial counsel allegedly failed to investigate or call as witnesses. Defendant's appendix includes a letter from defendant to the trial court requesting that thirteen named individuals be subpoenaed to testify at his trial, and in his pro se brief to the PCR court defendant renamed five of the individuals and claimed trial counsel was ineffective by failing to interview them. Defendant's PCR petitions and other submissions, however, do not include any affidavits or certifications based on personal knowledge describing the testimony of any putative alibi witnesses, demonstrating their testimony would have supported an alibi defense or establishing a reasonable probability that but for trial counsel's failure to interview or call them as witnesses, the result of defendant's trial would have been different.

therefore did not sustain his burden of establishing that his trial counsel's performance was deficient.

The record is similarly devoid of any competent evidence establishing a reasonable probability that but for trial counsel's purported failure to investigate and call alibi witnesses the result of defendant's trial would have been different. Indeed, defendant does not provide any evidence concerning the testimony of any purported alibi witness his counsel failed to call at trial or establishing a reasonable probability the testimony would have changed the outcome of defendant's trial. A defendant may show prejudice by his trial counsel's failure to conduct an investigation where he or she presents evidence showing the testimony that would have been offered by an alibi witness would "have given rise to reasonable doubt about [the] defendant's guilt." Id. at 588. Defendant makes no such showing here.[4]

---

[4] Contrary to defendant's conclusory assertions, the record shows trial counsel asserted an alibi defense and presented evidence supporting the defense through his cross-examination of the State's witnesses and presentation of defense witnesses and evidence detailing defendant's alleged movements and locations before, during and after Love's murder. Defendant presents no competent evidence showing that any investigation beyond that which supported counsel's presentation of the alibi defense at trial would have yielded witnesses or evidence further supporting the defense.

Defendant also asserts his trial counsel was ineffective by failing to obtain a video recording from a convenience store that he contends would support his alleged alibi that he was at the store when Love was murdered. The argument is based on the false premise that the recording was not recovered from the store. In fact, the police obtained a disc from the convenience store but the disc did not contain a recording. In support of defendant's PCR petition, he fails to present any competent evidence that any error by his trial counsel resulted in the recovery of the blank disc or that, if his counsel had not allegedly erred in failing to conduct an investigation, counsel would have recovered a disc with a recording from the convenience store supporting defendant's putative alibi defense.

The record shows defendant failed to sustain his burden under both prongs of the Strickland standard on his claim that trial counsel was ineffective by failing to conduct an adequate investigation and failing to call alibi witnesses at trial. Because defendant did not satisfy either prong of the Strickland standard, the PCR court correctly denied his petition, Strickland, 466 U.S. at 700, without an evidentiary hearing, Porter, 216 N.J. at 355, on his ineffective assistance of trial counsel claim.

We also reject defendant's contention the PCR court erred by denying his claim that his appellate counsel was ineffective. Defendant argues appellate counsel's performance was deficient because she failed to argue on direct appeal that trial counsel was ineffective by failing to conduct an adequate investigation and failing to call alibi witnesses.

Defendant is entitled to the effective assistance of appellate counsel, but "appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by the defendant." State v. Morrison, 215 N.J. Super. 540, 549 (App. Div.) (citing Jones v. Barnes, 463 U.S. 745, 754 (1983)); see also State v. Gaither, 396 N.J. Super. 508, 516 (App. Div. 2007) (holding that appellate counsel is not "required to advance every claim insisted upon by a client on appeal"). Defendant's appellate counsel's performance was not deficient by failing to argue that trial counsel failed to conduct an adequate investigation and call alibi witnesses because, as noted, those claims concerning trial counsel lack merit. A criminal defendant's counsel is not ineffective by failing to raise a meritless legal argument on the defendant's behalf. State v. Worlock, 117 N.J. 596, 625 (1990).

Moreover, claims of ineffective assistance of trial counsel do not ordinarily find an appropriate remedy on direct appeal. State v. Preciose, 129

18

N.J. 451, 460 (1992). Thus, defendant's appellate counsel was not deficient by failing to argue on direct appeal that trial counsel was ineffective. Under the circumstances presented here, appellate counsel properly reserved the claim for post-conviction relief. See State v. Lewis, 389 N.J. Super. 409, 416 (App. Div. 2007) (finding "ineffective assistance of counsel claims are best left to post-conviction review").

Defendant also argues he is entitled to post-conviction relief because his conviction for conspiracy to commit murder is against the weight of the evidence. We reject the argument because it could have been raised on direct appeal. See State v. Goodwin, 173 N.J. 583, 593 (2002) (finding that under Rule 3:22-4, a defendant may not assert a claim in a PCR proceeding that could have been raised on direct appeal); see also State v. McQuaid, 147 N.J. 464, 483 (1997) (finding that PCR "is not used to challenge the sufficiency of evidence used to convict a defendant"); see also State v. Morales, 120 N.J. Super. 197, 200 (App. Div. 1972) (holding a "claim that the verdict was against the weight of the evidence can be raised only on a direct appeal; it is not a ground for post-conviction relief").[5]

_____

[5] Any argument that a verdict is against the weight of the evidence may not be raised on direct appeal unless the defendant first moved in the trial court for a

In addition, defendant makes no showing that his assertion of the claim for the first time in his PCR petition falls within one of the exceptions under Rule 3:22-4(a). He does not argue or establish that the grounds for relief, the alleged lack of evidence supporting his conviction for conspiracy to commit murder, could not have been reasonably raised on direct appeal, R. 3:22-4(a)(1), or that denial of his request for relief would be contrary to a new rule of constitutional law, R. 3:22-4(a)(3).

Defendant also fails to demonstrate that enforcing the Rule 3:22-4 bar "would result in fundamental injustice." R. 3:22-4(a)(2). "To succeed on a fundamental-injustice claim, the [defendant] must make '"some showing"' that an error or violation '"played a role in the determination of guilt."'" Nash, 212 N.J. at 547 (citations omitted).

Defendant cannot establish that enforcement of the Rule 3:22-4 bar would result in a fundamental injustice because there was ample evidence supporting his conviction for conspiracy to commit murder. See N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3. Defendant's claim his conviction was against the weight of

---

new trial on that basis. State v. Fierro, 438 N.J. Super. 517, 530 (App. Div. 2015) (citing R. 2:10-1). Defendant's trial counsel made a motion for a new trial and argued his conviction for conspiring to murder Love was against the weight of the evidence. The trial court denied the motion prior to defendant's sentencing.

A-4620-16T1

the evidence is based on the premise that he could not logically be convicted of conspiracy to commit murder because the jury was unable to reach a verdict on the charges that he murdered Love and possessed a weapon for unlawful purposes. However, consistency of verdicts in a criminal case is not necessary because each charge in an indictment is considered separately, and "[a] jury verdict, even an inconsistent one, is upheld on appeal if the evidence is sufficient to establish guilt on the count of conviction." Fierro, 438 N.J. Super. at 528-29. Thus, any perceived inconsistency between the jury's inability to reach a verdict on the murder and gun possession charge and defendant's conviction for conspiracy to commit the murder is of no moment. In addition, the record supports the PCR court's determination there was evidence supporting the jury's determination defendant conspired with Miller to commit Love's murder,[6] and defendant does not demonstrate otherwise. We therefore discern no basis to conclude that application of the Rule 3:22-4 bar to defendant's claim his

---

[6] The evidence included testimony establishing Miller requested that defendant come to the Ten's Enough club to provide Miller with "back up," defendant brought the handgun used to murder Love to the Ten's Enough club and was told by Miller to "take care" of Love immediately before Love was shot, defendant was identified by five eyewitnesses as being present when Love was shot, defendant fled the scene of the shooting with the handgun, and defendant admitted his involvement in Love's murder.

conviction for conspiracy to commit Love's murder is against the weight of the evidence will result in a fundamental injustice.

We have carefully considered the arguments contained in defendant's pro se appellate brief, and they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We add only that defendant's arguments are based on inaccurate statements of legal principles, a misapplication of legal principles, allegations of fact that are either unsupported by competent evidence or contradicted by the record, or are otherwise barred under Rule 3:22-4.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4620-16T1