# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0251-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

U.M.,

    Defendant-Appellant.

_____

Argued telephonically May 6, 2020 –
Decided August 28, 2020

Before Judges Fisher, Gilson, and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 14-04-0858.

Annette Verdesco argued the cause for appellant (Anthony Pope Law Firm, P.C., attorneys; Annette Verdesco and Eric Feinberg, on the briefs).

Barbara A. Rosenkrans, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Theodore N. Stephens II, Acting Essex County Prosecutor, attorney; Barbara A. Rosenkrans, of counsel and on the brief).

PER CURIAM

Defendant was charged with numerous crimes related to the alleged sexual assault of his two nieces when the nieces were children between the ages of seven and ten. A jury convicted defendant of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1), second-degree sexual assault, N.J.S.A. 2C:14-2(b), and two counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). The jury acquitted defendant of all other charges.

The sexual assault convictions were merged, and defendant was sentenced to twelve years in prison subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. He was also required to register under Megan's Law, N.J.S.A. 2C:7-1 to -23, and he was sentenced to parole supervision for life. In addition, defendant was sentenced to a consecutive prison term of six years for one of the endangering convictions and a concurrent term of six years in prison for the other endangering conviction. Accordingly, in aggregate defendant was sentenced to eighteen years in prison.

Defendant appeals, contending that he is entitled to a new trial because the State introduced prejudicial testimony from an expert concerning the Child Sexual Abuse Accommodation Syndrome (CSAAS). He also argues that his motions for a mistrial, a judgment of acquittal, and a new trial were improperly

denied. We reverse his convictions and remand for a new trial because, after defendant's convictions but while his appeal was pending, our Supreme Court held that testimony about CSAAS lacks a reliable scientific basis and, with one narrow exception, is inadmissible. State v. J.L.G., 234 N.J. 265, 272 (2018). The holding in J.L.G. applies retroactively to cases such as defendant's, which was pending direct appeal when J.L.G. was issued. State v. G.E.P., ___ N.J. ___, ___ (2020) (slip op. at 42-43).

## I.

Defendant is the paternal uncle of E.M., who was born in August 2005, and G.M., who was born in June 2002.[1] In 2012 and 2013, when the nieces were between the ages of seven and ten, defendant and his wife, A.M., would often babysit the girls on Saturdays while their mother, Y.M., worked. At that time, Y.M. was divorced from the girls' father, who was defendant's brother.

In May 2013, the girls told their mother that defendant had touched their vaginas and G.M.'s breasts while he was babysitting them. The mother informed the father and later reported the assaults to the police. Shortly thereafter, the

---

[1] We use initials to protect the privacy of the victims. See N.J.S.A. 2A:82-46; R. 1:38-11(c)(9), (12).

A-0251-17T4

mother was interviewed and a detective with the Prosecutor's Office separately interviewed each of the girls. The interviews of the girls were video recorded.

In April 2014, defendant was indicted for nine crimes related to the alleged sexual assaults of his nieces. A trial was conducted in October and November 2016. At trial, the jury heard testimony from ten witnesses. The State presented testimony from seven witnesses: E.M.; G.M.; Y.M.; Robert Pope, the detective who interviewed the girls; Doris Soto-Rodriguez, the detective who interviewed Y.M.; Dr. Deborah Steinbaum, an expert in child abuse pediatrics; and Dr. Susan Esquilin, an expert who testified about CSAAS. Defendant presented testimony from three witnesses: A.M., defendant's wife; M.C., defendant's neighbor and landlord; and K.B., defendant's work supervisor.

G.M. testified that the assaults began in 2012, and while E.M. could not recall the first time defendant assaulted her, both victims testified that the assaults occurred on a frequent basis, usually while defendant and their aunt were babysitting them at defendant's home. The jury also watched each victim's video-recorded interview and heard testimony about what the girls had disclosed to their mother, Detective Pope, and Dr. Steinbaum.

E.M. testified that the assaults started when she was seven years old. She described two incidents in detail. After visiting a park, she came back to

defendant's house and took a nap in her aunt and uncle's bedroom. When she woke up, defendant was lying next to her, his hand was inside her stocking, and he touched her vagina. At trial, E.M. testified that defendant touched her "in [the] V." Her descriptions of the touching, however, were not always consistent. Sometimes E.M. described the touching as "on" her vagina, while other times she stated that the touching was "in" her vagina.

E.M. also described an assault that took place when she was eating nachos. She testified that she was at defendant's home and was eating nachos in the living room on a couch. Defendant came into the room, sat next to her, put his hand on her leg, and tried to touch her vagina. E.M. went on to explain that her aunt then entered the room and defendant removed his hand.

G.M. testified that she was either nine or ten when defendant sexually assaulted her by touching her breasts and vagina. She described several incidents, which included an incident at a pool. G.M.'s testimony regarding the nachos incident was inconsistent with E.M.'s testimony. G.M. testified that she and E.M. were sitting in the living room when defendant sat on the couch and touched both of their vaginas over their clothing. Later, however, G.M. testified that she was mistaken and clarified that defendant only touched E.M.

As already noted, the jury also heard testimony from Y.M., the girls' mother, and Detective Pope. Those witnesses recounted what the girls had told them about the assaults when the girls first disclosed the abuse. Some of the testimony corroborated the girls' testimony, but other parts of those witnesses' testimony were inconsistent with or differed from the girls' testimony.

During Y.M.'s testimony, she stated that defendant's family had told her not to file a complaint about what happened. Defense counsel objected and requested a mistrial. The trial court denied the motion but struck the testimony and instructed the jury to disregard Y.M.'s testimony concerning what defendant's family had allegedly told her.

Detective Soto-Rodriguez also testified for the State. She explained that she took a statement from Y.M. when Y.M. first reported the assaults to the police.

The State also presented testimony from two experts: Dr. Steinbaum and Dr. Esquilin. Dr. Steinbaum conducted medical evaluations of E.M. and G.M. in June 2013, approximately one month after they first disclosed the assaults. She found no physical evidence that either girl had been sexually assaulted. She recounted for the jury that E.M. had told her that defendant digitally penetrated her by touching her "private parts." She also told the jury that G.M. had reported

that defendant touched her vagina over her clothes but denied being touched in "other areas."

Dr. Esquilin presented extensive testimony concerning CSAAS. She described in detail for the jury all five elements of the syndrome: secrecy, helplessness, entrapment and accommodation, delayed disclosure, and retraction. Dr. Esquilin explained that CSAAS is not a diagnosis; rather, it is a syndrome consistent with a pattern of behavior among children who have been sexually abused. She also explained that the behavior does not necessarily mean that abuse occurred.

The witnesses called by the defense disputed that any assault could have happened. A.M., defendant's wife and the girls' aunt, testified that she never saw defendant abuse E.M. or G.M. She also testified that on Saturdays defendant was either working or assisting friends with car repairs. She disputed that she and defendant babysat the girls on a regular basis. Instead, she explained that she had only agreed to watch the girls on August 11, 2012, October 13, 2012, and May 4, 2013. She testified that on August 11, 2012, she watched the girls at her home, but defendant was not there during that time; rather, he drove the girls home after work. Similarly, she testified that defendant was not home on October 13, 2012.

A-0251-17T4

M.C., defendant's landlord who lived downstairs, testified that defendant was not home on May 4, 2013. She explained that A.M. had asked if the girls could come over and after they arrived, M.C. went upstairs to A.M.'s apartment because the girls were making noise and she did not want them waking her husband, who worked at night and slept during the day. M.C. went on to testify that she stayed with A.M. and the girls until approximately 4 p.m. on May 4, 2013.

K.B., defendant's work supervisor, testified that defendant worked some Saturdays, usually between 7 a.m. and 5 p.m. K.B. also explained that he considered defendant a good worker and a friend.

At the conclusion of the evidence, defendant moved for a judgment of acquittal, arguing that there was insufficient evidence to support the elements of the alleged crimes. Defendant also argued that the inconsistent statements by the victims created reasonable doubt as to the elements of the offenses. The trial court denied the motion for acquittal, reasoning that there was evidence of all elements of the crimes and it was for the jury to resolve the alleged inconsistencies by determining whether the State had presented evidence beyond a reasonable doubt of each of the elements of the charged offenses.

A-0251-17T4

The jury thereafter found defendant guilty of three crimes related to E.M.: first-degree aggravated sexual assault; second-degree sexual assault; and second-degree endangering. Concerning G.M., the jury found defendant guilty of second-degree endangering. The jury acquitted defendant of all other charges, which included four counts of second-degree sexual assault and one count of second-degree endangering.

Defendant moved for a new trial arguing that the jury's verdict was against the weight of the evidence. In particular, defendant challenged his conviction for first-degree sexual assault of E.M., contending there was no evidence that he had penetrated her. The trial court denied that motion and then sentenced defendant. As already noted, defendant was sentenced to an aggregate of eighteen years in prison with over ten years of parole ineligibility.

## II.

On appeal, defendant makes four arguments, which he articulates as follows:

> Point One – The Trial Court Committed Reversible Error in Denying Appellant's Motion for a New Trial.
>
> Point Two – The Trial Court Committed Reversible Error in Denying Appellant's Motion for a Mistrial.

9

Point Three – The Trial Court [C]ommitted Reversible Error in Denying Appellant's Motion for a Judgment of Acquittal.

Point Four – Appellant's [C]onviction Warrants Reversal Due to [t]he Admission of CSAAS Testimony at Trial.

Defendant also filed a supplemental brief, expanding his arguments concerning the CSAAS testimony and contending:

Point One – The Supreme Court's Holding [i]n State v. J.L.G. Applies Retroactively [t]o [T]his Case.

Point Two – The CSAAS Testimony Adduced [a]t Trial Exceeded the Limited Scope Allowed [b]y the Supreme Court in State v. J.L.G.

Point Three – The Admission of CSAAS Testimony [a]t Trial Exceeded the Scope Allowed by State v. J.L.G., . . . [W]hich [D]oes [N]ot Constitute Harmless Error and Therefore Requires Appellant's Conviction be Vacated.

Our Supreme Court has determined that its holding in J.L.G. applies retroactively to cases such as defendant's, which was pending direct appeal when J.L.G. was issued in 2018. G.E.P., ___ N.J. ___ (slip op. at 42-43). Moreover, the CSAAS testimony presented against defendant was extensive and was not harmless. Accordingly, we vacate defendant's convictions and remand for a new trial.

10

In 1983, Dr. Roland Summit, M.D., identified a syndrome he named "The Child Sexual Abuse Accommodation Syndrome." J.L.G., 234 N.J. at 271, 281. Dr. Summit contended that the syndrome included five categories of behavior that were common in victims of child sexual abuse: secrecy; helplessness; entrapment and accommodation; delayed disclosure; and retraction. Id. at 281-82.

In 1993, our Supreme Court held that CSAAS evidence was sufficiently reliable to be admitted at trial. State v. J.Q., 130 N.J. 554, 556 (1993). In 2018, however, the Court again reviewed the scientific evidence and held "it is no longer possible to conclude that CSAAS has a sufficiently reliable basis in science to be the subject of expert testimony." J.L.G., 234 N.J. at 272. Accordingly, our Supreme Court ruled that expert testimony about CSAAS and four of its component behaviors could no longer be admitted at criminal trials. Ibid. The Court carved out a narrow exception for delayed disclosure and held that evidence of that behavior could be presented if it satisfied evidence Rule 702. Ibid. Specifically, the Court in J.L.G. reasoned:

> Based on what is known today, it is no longer possible to conclude that CSAAS has a sufficiently reliable basis in science to be the subject of expert testimony. We find continued scientific support for only one aspect of the theory – delayed disclosure – because scientists

generally accept that a significant percentage of children delay reporting sexual abuse.

We therefore hold that expert testimony about CSAAS in general, and its component behaviors other than delayed disclosure, may no longer be admitted at criminal trials. Evidence about delayed disclosure can be presented if it satisfies all parts of the applicable evidence rule. See N.J.R.E. 702. In particular, the State must show that the evidence is beyond the understanding of the average juror.

[Ibid.]

Our Supreme Court's decision in J.L.G. was issued after defendant's trial and convictions, but while his direct appeal was pending. The Court has more recently ruled that its holding in J.L.G. applies retroactively to cases that were pending appeal in 2018 when the Court issued the ruling in J.L.G. G.E.P., ___ N.J. ___ (slip op. at 42-43).

In J.L.G., our Supreme Court held that the introduction of testimony about CSAAS was harmless because "there was overwhelming evidence of [the] defendant's guilt." 234 N.J. at 273. That evidence included an audio recording of an act of sexual abuse. Ibid. In G.E.P., the Court considered consolidated matters involving four defendants: G.E.P., R.P., C.P., and C.K. ___ N.J. ___ (slip op. at 14, 44-48). The Court held that the CSAAS testimony presented against G.E.P. was harmless because the State also presented strong

A-0251-17T4

corroborative evidence of the abuse that included "a recorded phone call between [the victim] and G.E.P., and the straps, clothespins, and other items seized from G.E.P.'s office." Id. at 13-14, 44-46. By contrast, the Court found that the CSAAS testimony presented against R.P., C.P., and C.K., was harmful and required reversal of their convictions because the State relied on the victims' testimony and the CSAAS experts were used to support the victims' otherwise uncorroborated testimony. Id. at 46-48.

Here, we cannot conclude that the CSAAS evidence presented against defendant was harmless. The CSAAS testimony presented against defendant was like the testimony presented against R.P., C.P., and C.K. At defendant's trial, the State presented extensive testimony from Dr. Esquilin concerning each element of CSAAS. In that regard, Dr. Esquilin described for the jury in detail the syndrome, and testified about secrecy, helplessness, entrapment and accommodation, and retraction.

Concerning delayed disclosure, Dr. Esquilin also provided extensive testimony, describing to the jury that a child's disclosures are often incomplete and that children reveal different things at different times. Dr. Esquilin went on to testify that such changing disclosures are not "inconsistent"; rather, children disclose different information at different times as memories return. The State

A-0251-17T4

then emphasized that testimony in its arguments to the jury during closing. In particular, the State sought to buttress the credibility of E.M. and G.M. by explaining their inconsistent testimony in terms of delayed disclosure and referring to Dr. Esquilin's testimony about how memories of such events return in pieces.

Accordingly, the testimony presented against defendant exceeded what was permissible under J.L.G. in two significant respects. First, there was testimony about the syndrome in general and the four elements of the syndrome that the Court has ruled have no scientific basis. Second, and just as significantly, the testimony concerning delayed disclosure was not circumscribed and was not consistent with the rule announced in J.L.G.

E.M. and G.M. both testified at trial and explained why they had not disclosed the abuse previously. Their delayed disclosure, moreover, was not long in duration. The victims made the disclosure in early May 2013, they described abuse that had just occurred, as well as abuses that occurred in 2012. The trial court, therefore, did not have the opportunity to assess whether expert testimony concerning delayed disclosure was necessary for the jury's understanding of that issue as now mandated by J.L.G.

14

In short, we reverse defendant's convictions and remand for a new trial. Prior to the new trial, the trial court will need to assess whether the State will be permitted to introduce expert testimony concerning delayed disclosure.

Given our reversal on the CSAAS issue and because we are remanding for a new trial, defendant's arguments concerning the denial of his motions for a mistrial and a new trial are moot. See State v. Mejia, 141 N.J. 475, 505 (1995); State v. Green, 417 N.J. Super. 190, 209 (App. Div. 2010). Moreover, we need not decide his arguments for an acquittal because there will be a new trial and any alleged inconsistencies in testimony will have to be assessed at the new trial. We do point out, however, that on the record before us, defendant's arguments concerning a judgment of acquittal lack merit to the extent they rely on alleged inconsistencies in the victims' testimony. The trial court properly ruled that such inconsistencies were for the jury to resolve and because there was testimony concerning each element of the crimes on which the jury convicted defendant, whether there was sufficient evidence establishing defendant's guilt beyond a reasonable doubt was a question for the jury. See State v. Brown, 118 N.J. 595, 617-18 (1990); State v. Fierro, 438 N.J. Super. 517, 530 (App. Div. 2015).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0251-17T4