# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4407-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

R.J.R.,

     Defendant-Appellant.

_____

Submitted September 20, 2022 – Decided October 17, 2022

Before Judges Sumners, Geiger and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 17-02-0139.

Joseph E. Krakora, Public Defender, attorney for appellant (Lee March Grayson, Designated Counsel, on the brief).

William C. Daniel, Union County Prosecutor, attorney for respondent (Michele C. Buckley, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant R.J.R.[1] was indicted for first-degree aggravated sexual assault upon A.S. (Ava) when she was less than thirteen years old, N.J.S.A. 2C:14-2(a); second-degree sexual assault upon Ava when she was less than thirteen years old and defendant was at least four years older than Ava, N.J.S.A. 2C:14-2(b); and second-degree endangering the welfare of a child with sexual conduct, N.J.S.A. 2C:24-4(a)(1).

After two Rule 104 testimonial hearings, Judge Candido Rodriguez, Jr. granted the State's motions to admit Ava's out-of-court statements. First, the judge, applying the tender years hearsay exception, N.J.R.E. 803(c)(27), ordered the admission of Ava's statements to Union County Prosecutor's Office Special Victim's Unit Detective Nicholas Falcicchio, which was video-recorded, and school guidance counselor Jasmine Lee. Next, the judge ordered the admission of Ava's statements to nurse practitioner Romelia Hasegawa, finding they were made for the purpose of a medical evaluation, N.J.R.E. 803(c)(4).

---

[1] We use initials and pseudonyms to protect the privacy of the victim and preserve the confidentiality of these proceedings. N.J.S.A. 2A:82-46(a); R. 1:38-3(c)(9). We use the pseudonym first name of the victim's mother for convenience; we mean no disrespect.

Following a five-day jury trial, in which Ava, Lee, Falcicchio, Hasegawa, and J.S. (Jill), Ava's mother, testified, defendant was found guilty of all charges. He was subsequently sentenced to an aggregate fifteen-year prison term.

In this appeal, defendant contends:

POINT I

THE DEFENDANT'S CONVICTIONS SHOULD BE REVERSED BECAUSE THE TRIAL COURT IMPROPERLY GRANTED THE STATE'S MOTION TO ADMIT STATEMENTS MADE BY THE ALLEGED VICTIM TO THE NURSE PRACTITIONER UNDER THE MEDICAL DIAGNOSIS EXCEPTION OF THE HEARSAY RULE, N.J.R.E. 803(c)(4).

POINT II

THE DEFENDANT'S CONVICTIONS SHOULD BE REVERSED BECAUSE THE TRIAL COURT ERRED BY PERMITTING THE NURSE PRACTITIONER, WHO WAS NOT A FORENSIC NURSE CERTIFIED SEXUAL ASSAULT EXAMINER (FN-CSA), TO TESTIFY AS AN EXPERT WITNESS FOR THE STATE IN THE FIELD OF CHILD MALTREATMENT.

POINT III

THE DEFENDANT'S CONVICTIONS SHOULD BE REVERSED BECAUSE THE TRIAL COURT ERRED BY FAILING TO INSTRUCT THE JURY ON THE LIMITED USE OF FRESH COMPLAINT TESTIMONY. (Not Raised Below).

A-4407-18

POINT IV

THE DEFENDANT'S CONVICTIONS SHOULD BE REVERSED BECAUSE THE JURY VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE. (Not Raised Below).

POINT V

THE SENTENCE IMPOSED BY THE TRIAL COURT WAS UNDULY EXCESSIVE.

POINT VI

REVERSAL IS REQUIRED IN THIS CASE BECAUSE OF THE CUMULATIVE EFFECTS OF THE ERRORS DURING THE PRETRIAL HEARINGS, TRIAL[,] AND SENTENCING. (Not Raised Below).

Having considered these arguments and the applicable law, we affirm for the reasons set forth below.

I.

We first address defendant's contentions in Point I and II concerning the Rule 104 ruling that Ava's statements to Hasegawa regarding the sexual assaults were admissible at trial and that Hasegawa could testify as expert regarding sexual mistreatment of children. Before detailing the admitted testimony and our analysis of Judge Rodriguez 's rulings, we begin with the understanding that a trial judge retains broad discretion in determining the admissibility of

4

evidence. State v. Garcia, 245 N.J. 412, 430 (2021). "The abuse of discretion standard instructs us to 'generously sustain [the trial court's] decision, provided it is supported by credible evidence in the record.'" State v. Brown, 236 N.J. 497, 522 (2019) (quoting Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 384 (2010)).

Ava's Statements

At the Rule 104 hearing, Hasegawa, a nurse practitioner employed at the Metro Regional Diagnostic and Treatment Center (RDTC), Newark Beth Israel Medical Center, testified she routinely conducted medical examinations of three to four child patients a week for child maltreatment, sexual abuse, and physical abuse, the majority of which were done at the request of the New Jersey Division of Child Protection and Permanency (DCPP). She explained the examinations were not to collect evidence, but to ensure the child patient was "okay medically," check for injuries, facilitate testing, and provide appropriate treatment.

As to Ava's medical exam–done at DCPP's request, Hasegawa said she first spoke with a DCPP worker, then spoke separately with Jill and Ava. After asking Jill about Ava's medical history and eating and sleeping habits, Hasegawa obtained Jill's consent to privately question and examine Ava.

Hasegawa examined Ava in a child-friendly medical suite. She told Ava she was a nurse practitioner and was going to examine her body like a doctor to make sure her "body's okay." In response to Hasegawa's question if Ava knew why she was there, Ava "spontaneously reported" that an adult male had "raped" her.[2] Ava disclosed the abuse started when she was eight years old and continued until she was ten years old. Based on Ava's detailed revelations of the abuse, Hasegawa noted in her report that Ava suffered penile-vaginal penetration; penile-anal penetration; oral-vaginal contact; penile-oral penetration; and digital-vaginal penetration.

Due to Jill's and Ava's statements, Hasegawa conducted a full physical examination of Ava. The results were normal; Hasegawa expressed that given the passage of time between the examination and the last incident of abuse, she was not surprised because vaginas and anuses heal "quickly and completely."

Hasegawa's medical report regarding Ava's examination was only provided to DCPP. However, Hasegawa notified Jill and Ava of her findings.

In an oral decision, Judge Rodriguez ruled Ava's statements to Hasegawa

---

[2] In admitting Ava's statements to Hasegawa under N.J.R.E. 803(c)(4), the judge ruled that her identification of defendant was not admissible under the hearsay exception, thus the only identifying information permitted was "that the perpetrator of the abuse was an adult male."

6

were admissible under N.J.R.E. 803(c)(4) because they "were made in the context of [a] pediatric health examination . . . with a focus to areas that [Ava] brought attention to in her disclosures of her injuries she incurred as a result of the alleged abuse in her statements."  The judge found "[Ava] made [her] statements in good faith reliance that [Hasegawa] would treat her after she has established a significant rapport with both [Ava] and her mother before conducting the physical examination."  The judge further noted Hasegawa "immediately relayed" her findings to Ava and Jill at "each step of the examination."  Consequently, the judge rejected defendant's contention that because Ava's statements "to [Hasegawa] were for the purpose of gathering evidence," they did not fall within the ambit of N.J.R.E. 803(c)(4).

In his appeal, defendant repeats the argument dismissed by Judge Rodriguez.  The law and the record support the judge 's ruling.

Under N.J.R.E. 803(c)(4)(A), a hearsay statement is admissible provided it "is made in good faith for purposes of, and is reasonably pertinent to, medical diagnosis or treatment."  See also Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. on N.J.R.E. 803(c)(4) (2022) ("The N.J.R.E. 803(c)(4) exception to the hearsay exclusionary rule is well known in New Jersey law and is based on the assumption that the declarant is more interested in obtaining a

A-4407-18

diagnosis and treatment culminating in a medical recovery than he is in obtaining a favorable medical opinion culminating in a legal recovery."). Hasegawa's Rule 104 testimony supports the judge's finding that she was interviewing and examining Ava to determine medical diagnosis and treatment, and Ava 's statements were made in good faith response for those purposes.

Defendant mistakenly relies on State v. Pillar, 359 N.J. Super. 249, (App. Div. 2003), in arguing Ava's statements to Hasegawa were inadmissible because Hasegawa's examination was for evidence gathering.  In Pillar, the defendant was accused of sexually assaulting P.T., a female minor.  Id. at 257.  After the indictment, P.T. was taken to a [Division of Youth and Family Services][3] doctor where she indicated that "'the kind of sexual abuse she was alleging included penile to genital area touching.'"  Id. at 287.  "If the examination . . . was conducted for evidence gathering purposes, the hearsay statements contained in the medical history would be inadmissible as not falling within [N.J.R.E. 803(c)(4)]."  Id. at 289 (citing State in Interest of C.A., 201 N.J. Super. 28, 33-34 (App. Div.1985)).  In excluding only the part of the doctor's testimony relating to the specifics of sexual abuse alleged by P.T., we said "[t]he record is

---

[3]  The Division of Youth and Family Services is the predecessor to DCPP.

not entirely clear as to why P.T. was referred to [the doctor] for examination." Ibid.

Pillar is not determinative in this matter. Unlike in Pillar, the record here is clear that Ava's examination was for medical purposes. Hasegawa examined Ava for purposes of medical diagnosis and treatment; ensuring Ava was "okay medically." Hasegawa explained that Ava's statements regarding her abuse directly impacted the course of the examination, making them relevant to her medical diagnosis and potential treatment. Consequently, there was no abuse of discretion in the judge's determination that Ava's statements were admissible under N.J.R.E. 803(c)(4). Hasegawa's Rule 104 hearing testimony supported the judge's finding that she was interviewing and examining Ava to determine medical diagnosis and treatment and that Ava 's statements were made in a good faith response for those purposes.

Admissibility of Hasegawa as an Expert

At trial, Judge Rodriguez qualified Hasegawa as an expert witness in child maltreatment based upon her testimony detailing her experience and training. Hasegawa has a Bachelor of Science degree in nursing and a Master of Science degree in nursing for advance nurse practitioners, which authorized her to see her own patients, write prescriptions, and perform acts similar to a medical

doctor. During her more than five years at the RDTC, she treated more than 150 children for sexual abuse, physical abuse, or neglect. Approximately ninety percent were referred for sexual abuse, and approximately seventy percent of those involved females under the age of eighteen. Hasegawa acknowledged she was not certified as a sexual assault nurse examiner (SANE nurse) but stated she had more than 700 hours of clinical training, more than the sixty-four hours required for a SANE certification. Moreover, Hasegawa explained that, unlike a SANE nurse who is limited to forensic examinations, examining children, and collecting evidence for rape kits, she is qualified to examine children, make a diagnosis, and treat them. In sum, the judge found "[Hasegawa] has the experience and the schooling to give an opinion as [an] expert."

Defendant contends that because Hasegawa was not a New Jersey Forensic Nurse - Certified Sexual Assault Examiner (FN-CSA), she lacked the necessary training and expertise to testify as a child endangerment expert. Defendant maintains Hasegawa's testimony, if permitted at all, should have been limited to the results of her medical examination. We are unpersuaded.

A trial judge's determination "that a witness is competent to testify as an expert is entitled to deference absent a showing of abuse of discretion." State v. Berry, 471 N.J. Super. 76, 121 (App. Div. 2022). The admissibility of expert

testimony is governed by N.J.R.E. 702, which states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." The rule also requires that: "(1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony." State v. Jenewicz, 193 N.J. 440, 454 (2008). These requirements are construed "liberally in light of Rule 702's tilt in favor of the admissibility of expert testimony." State v. Rosales, 202 N.J. 549, 562 (2010) (quoting Jenewicz, 193 N.J. at 454).

The fact that Hasegawa was not a FN-CSA is not dispositive of her qualification to testify as an expert in this matter. Her education and experience, particularly her role at the RDTC in examining children suffering from maltreatment, including victims of sexual abuse, spoke to her qualifications concerning the issues before the jury. Defendant points to no requirement that Hasegawa have a specific amount of experience or engage in a specific training protocol. In fact, as the judge reasoned, her experience at the RDTC qualified

her to give expert testimony.  See State v. Torres, 183 N.J. 554, 572 (2005) (citing to State v. Moore, 122 N.J. 420, 457-60 (1991)) ("The expert may be qualified on the basis of his experience, even when it is limited.").  Moreover, to the extent that Hasegawa had any deficiencies in her experience, this was appropriately explored at length during cross-examination.  See Jenewicz, 193 N.J. at 455 (noting that "courts allow the thinness and other vulnerabilities in an expert's background to be explored in cross-examination and avoid using such weaknesses as a reason to exclude a party's choice of expert witness to advance a claim or defense").

Hasegawa's Testimony

Defendant contends Hasegawa's lack of qualification demonstrated "great bias" when she refused to acknowledge the possibility that a lack of forensic evidence could indicate a false allegation of sexual abuse.  Defendant points to the following cross-examination exchange:

> [Defense Attorney]:  We add to this the fact that there are no forensic findings because of the possibility that the disclosure itself is false.
>
> [Hasegawa]:  I do medical examinations. I don't do forensic evaluations.
>
> [Defense Attorney]:  You accept the possibility that in a given case there could be no residual findings because the disclosure of sexual abuse is false?

[Hasegawa]:  No.

[Defense Counsel]:  That would mean then that to you the disclosure of sexual abuse is always true?

[Hasegawa]:  It's based on what the child tells me.

[Defense Counsel]:  So the child in your mind never lies?

[Prosecutor]:  Objection. Your Honor, it's for the jury to decide, not this witness.

THE [JUDGE]:  I think it's a proper question. I'll allow it.

[Hasegawa]:  Go ahead. Please state it again.

[Defense Counsel]:  So the child in your mind never lies?

[Hasegawa]:  Children under the age of 10 typically are not the best liars, if I may say. They tend to –

[Defense Counsel]:  Are you –

[Prosecutor]:  He asked the question.

[Defense Counsel]:  The question was yes or no question.

THE [JUDGE]:  Can you answer it yes or no?

[Hasegawa]:  No, I can't.

THE [JUDGE]:  She's going to answer it the way she can answer it.

13

[Defense Counsel]: Well, I didn't ask her why. I just asked her is it possible.

[Hasegawa]: I can't answer it yes or no.

Defendant contends Hasegawa's testimony suggesting Ava was not lying bolstered Ava's credibility and was harmful error clearly capable of producing an unjust result. This contention, however, is raised in the context of challenging the trial judge's qualification of Hasegawa as an expert. Defendant's brief does not articulate a substantive legal analysis that the testimony was bolstering Ava's credibility. Consequently, whether Hasegawa's testimony improperly bolstered the credibility of Ava's accusations is not properly before us and need not be addressed on appeal. R. 2:6-2(6); R. 2:6-9. See, e.g., Nextel of N.Y., Inc. v. Bd. of Adjustment, 361 N.J. Super. 22, 45 (App. Div. 2003) (citing Miller v. Reis, 189 N.J. Super. 437, 441 (App. Div.1983)) ("Where an issue is based on mere conclusory statements by the brief writer, we will not consider it."); State v. Hild, 148 N.J. Super. 294, 296 (App. Div. 1977) (stating "parties may not escape their initial obligation to justify their positions by specific reference to legal authority").

Nevertheless, in considering defendant's contention, we conclude it is without merit. While it is well-established that an expert "cannot express an opinion on the credibility of a witness or party," State v. Sowell, 213 N.J. 89,

103 (2013), Hasegawa did not definitively state children always tell the truth; rather, her cross-examination response attempted to explain why she could not provide a direct response regarding the veracity of child victims. Because neither the question nor Hasegawa's response referred to Ava, defendant's contention that her statements bolstered Ava's credibility falls short. Furthermore, consistent with our well-established guidelines, the judge instructed the jury it was free to weigh the credibility of Hasegawa's testimony, and it could accept or reject some or all of her testimony.

In addition, defendant contends Hasegawa's lack of training "was critical because she was permitted to speculate to the jury as an expert about why her forensic findings of a normal exam were expected." Defendant's objection relates to Hasegawa's testimony that approximately ninety to ninety-five percent of her cases involving vaginal penetration yielded "normal" vaginal exams, with the remaining amount involving "fresh injuries." Hasegawa opined that given the passage of time since Ava's last reported incident, Ava's "normal" physical examination results were expected, as abrasions or transections in the vagina generally heal "quickly and completely." Defendant, however, did not object to this testimony. Thus, we need not address the issue. R. 2:6-2(6); Sklodowsky

v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived.").

Yet, in considering defendant's contention, we conclude it is without merit. Hasegawa's opinion was consistent with N.J.R.E. 703, which mandates an expert opinion be grounded in "facts or data derived from . . . the expert's personal observations . . . ." State v. Townsend, 186 N.J. 473, 494 (2006) (quoting Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. on N.J.R.E. 703 (2005)). Further support is found in Pillar, where we held that, while the child's statements to the doctor were inadmissible under N.J.R.E. 803(c)(4), the remainder of the doctor's testimony was admissible, including her "expert testimony as to whether her negative physical examination of [the child] was consistent with the abuse testified to by [the child] . . . ." 359 N.J. Super. at 290. The doctor's testimony included statements that she had expected normal results, and such findings were consistent with her examination of other girls. Id. at 288-89. Because Hasegawa's statements regarding "normal" findings were based on her relevant training and experience, the judge did not abuse his discretion in permitting Hasegawa to offer this opinion.

II.

16

In Point III, defendant contends the trial judge erred by failing to instruct the jury on the limited use of fresh complaint testimony when admitting the testimony of Lee and Falcicchio about Ava's disclosure that defendant sexually abused her. Because their testimony was admitted under the tender years exception to the hearsay rule, N.J.R.E. 803(c)(27), and not as fresh complaint testimony, the contention is without merit.[4]

In his written decision granting the State's application to admit Ava's statements to Lee and Falcicchio under N.J.R.E. 803(c)(27), Judge Rodriguez found: (1) defendant had sufficient notice the State intended to offer the statements at trial; (2) Ava's statement was made within two years of the alleged abuse, with sufficient content to make it trustworthy; (3) Ava's statements were made spontaneously, she expressed discomfort when describing certain acts, and her description of the sexual abuse showed an understanding of sexual behavior consistent with that of a ten year old; and (4) there was little indication of a motivation to fabricate. Considering there is no argument that Ava's statements

---

[4] We note that at the conclusion of Lee's trial testimony, the judge misspoke by referring to her testimony as fresh complaint testimony, but he immediately corrected himself and clarified the testimony was admissible under the tender years hearsay exception, N.J.R.E. 803(c)(27).

A-4407-18

were improperly introduced under N.J.R.E. 803(c)(27), there is no reason to address the judge's rulings.

## III.

In Point IV, defendant contends there was insufficient credible evidence to support the jury's verdict. Because he failed to move under <u>Rule</u> 3:20-1[5] before the trial judge for a new trial, his contention is not cognizable on appeal. <u>See</u> <u>R.</u> 2:10-1;[6] <u>see also</u> <u>State v. Fierro</u>, 438 N.J. Super. 517, 530 (App. Div. 2015) ("We do not consider a weight-of-the evidence argument on appeal unless the appellant moved in the trial court for a new trial on that ground.").

---

[5] <u>Rule</u> 3:20-1, provides in relevant part:

> The trial judge shall not . . . set aside the verdict of the jury as against the weight of the evidence unless, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a manifest denial of justice under the law.

[6] Under <u>Rule</u> 2:10-1, "[i]n both civil and criminal actions, the issue of whether a jury verdict was against the weight of the evidence shall not be cognizable on appeal unless a motion for a new trial on that ground was made in the trial court."

Nevertheless, we can consider the merits of defendant's contention in the interest of justice. State v. Smith, 262 N.J. Super. 487, 511 (App. Div. 1993). We do so here.

"In considering whether a jury verdict was against the weight of the evidence, our task is to decide whether 'it clearly appears that there was a miscarriage of justice under the law.'" Id. at 512 (quoting R. 2:10-1). "We must sift through the evidence 'to determine whether any trier of fact could rationally have found beyond a reasonable doubt that the essential elements of the crime were present.'" Ibid. (quoting State v. Carter, 91 N.J. 86, 96 (1982)). "But an appellate court may not overturn the verdict 'merely because it might have found otherwise upon the same evidence.'" Ibid. (quoting State v. Johnson, 203 N.J. Super. 127, 134 (App. Div. 1985)).

"On a motion for a new trial, the objective is not to second-guess the jury but to correct [an] injustice that would result from an obvious jury error." State v. Saunders, 302 N.J. Super. 509 (App. Div. 1997). Thus, "[a]ppellate intervention is warranted only to correct an 'injustice resulting from a plain and obvious failure of the jury to perform its function.'" Smith, 262 N.J. Super. at 512 (quoting Johnson, 203 N.J. Super. at 134). "Where the jury's verdict was grounded on its assessment of witness credibility, a reviewing court may not

19

intercede, absent clear evidence on the face of the record that the jury was mistaken or prejudiced." Ibid. (citing State v. Haines, 20 N.J. 438, 446-47 (1956)).

Defendant contends the jury's verdict was unjust because it relied on Ava's credibility, which was lacking. He argues Lee's, Falcicchio's, and Hasegawa's testimony was not based on witnessing any sexual abuse but merely recounting Ava's false disclosures; there was no forensic evidence of sexual abuse supporting Ava's accusations; and Ava purportedly was the only witness to the abuse, despite some incidents allegedly having occurred in the presence of Elias, her three-year younger half-brother. Consequently, defendant contends Ava's credibility issues, compounded by the repetition of Ava's disclosures and the lack of fresh-complaint instruction, resulted in an unjust verdict.

We discern no cause to vacate the jury's verdict because there is no apparent jury error. See State v. Saunders, 302 N.J. Super. at 524 (On a motion for a new trial, the objective is not to second-guess the jury but to correct the injustice that would result from an obvious jury error.). Ava's testimony alone —she was sexually penetrated on more than one occasion by defendant, a man who resided with her and whom she viewed as a father—established all the elements of the convicted crimes. The jury had the discretion to weigh her

testimony, assess her demeanor, and judge her credibility, which indeed, it was charged to do. In assessing the evidence, the jury also was able to consider Jill's testimony that Ava did not tell her about the abuse, and determine to what extent, if any, it contradicted Ava's testimony. Moreover, it was able to draw its own conclusions regarding her accusations to Lee, Falcicchio, Hasegawa, as well as Hasegawa's testimony regarding Ava's examination and the lack of forensic evidence that Ava was abused.

The jury's verdict was based on its assessment of witness credibility, and there was nothing in the record demonstrating it was without factual support. See Smith, 262 N.J. Super. at 512 (citing Haines, 20 N.J. at 446-47) ("Where the jury's verdict was grounded on its assessment of witness credibility, a reviewing court may not intercede, absent clear evidence on the face of the record that the jury was mistaken or prejudiced."). Moreover, defendant's attacks on Lee's, Falcicchio's, and Hasegawa's testimony do not support his weight against the evidence argument. As mentioned above, Ava's statements to Lee and Falcicchio were properly admitted under the tender years exception, and her statements to Hasegawa were appropriately admitted under made for the purpose of a medical evaluation N.J.R.E. 803(c)(4). Hence, defendant's convictions must stand.

## IV.

In Point V, Defendant contends that the sentence imposed was unduly excessive in that the judge failed to apply any mitigating factors, overemphasized the aggravating factors, did not impose a sentence "one degree lower than the presumptive sentence," and did not impose a sentence towards the bottom end of the range for first-degree sentences. We are unpersuaded.

Defendant was sentenced to a fifteen-year prison term with a period of eighty-five percent parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2, for first-degree aggravated sexual assault. The offense of second-degree sexual assault was merged into the aggravated sexual assault offense. He was sentenced to a concurrent seven-year prison term for second-degree endangering the welfare of a child.

In imposing defendant's sentence, the judge applied aggravating factors two ("[t]he gravity and seriousness of harm inflicted on the victim"); three ("the risk that the defendant will commit another offense"); and nine ("need for deterring the defendant and others from violating the law"). N.J.S.A. 2C:44-1(a)(2), (3), and (9). The judge's analysis was aided by an Avenel Adult Diagnostic and Treatment Center risk assessment report by a licensed

psychologist, which concluded defendant's "behavior meets the criteria for a repetition but not for compulsion."

The judge did not find any mitigating factors. He rejected mitigating factor seven ("no history of prior delinquency or criminal activity"), N.J.S.A. 2C:44-1(b)(7), because defendant had prior criminal convictions albeit remote in time. The judge also declined to consider mitigating factor eight ("defendant's conduct was the result of circumstances unlikely to recur"), N.J.S.A. 2C:44-1(b)(8), reasoning that, while defendant's parole supervision and Jill's decision[7] prevent him from having contact with Ava in the future, he must also protect "all [possible] victims" from future harm. In refusing to apply mitigating factor nine ("character and attitude of the defendant indicate that the defendant is unlikely to commit another offense"), N.J.S.A. 2C:44-1(b)(9), the judge found that any positive representations regarding defendant's character were undermined by his behavior towards Ava in the presence of her stepbrother. The judge also declined to apply mitigating factor eleven ("imprisonment of the defendant would entail excessive hardship to the defendant or the defendant's dependents"), N.J.S.A. 2C:44-1(b)(11), stating that while defendant's son with

---

[7] At sentencing, the State presented Jill's letter stating she and defendant agreed to be apart and the future interactions with their shared son will be under supervised conditions.

Jill may be adversely impacted from his separation from defendant, his son had Jill's support.  In sum, the judge determined aggravating factors outweigh non-existent mitigating factors.

The scope of our review of a sentence is limited.  As a general matter, we review sentences under an abuse of discretion standard.  State v. Pierce, 188 N.J. 155, 166 (2006).  Under that standard, a "reviewing court must not [simply] substitute its judgment for that of the sentencing court."  State v. Fuentes, 217 N.J. 57, 70 (2014) (citing State v. O'Donnell, 117 N.J. 210, 215 (1989)).  Rather,

> [t]he appellate court must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Ibid. (second alteration in original) (quoting State v. Roth, 95 N.J. 334, 364–65 (1984)).]

In this instance, Judge Rodriguez carefully considered the aggravating and mitigating circumstances and sufficiently explained his findings.  See State v. Case, 220 N.J. 49, 64–65 (2014) (requiring judges to consider any relevant aggravating and mitigating factors called to their attention and to explain how they arrived at a particular sentence).  The judge presided over the trial and thus

24

was intimately familiar with the circumstances of the offense. He gave appropriate weight to aggravating factors and carefully considered, but rejected, the mitigating factors proposed by defendant. The judge imposed a sentence in the middle of the range, with ten years for a first-degree offense and seven years for a second-degree offense.

Finally, downgrading defendant's conviction from a first-degree conviction to a second degree for sentencing purposes occurs on a limited basis. N.J.S.A. 2C:44-1(f)(2) provides a downgrade of an offense to a crime that is one degree lower is only proper where the judge is clearly convinced that the mitigating factors "substantially outweigh the aggravating factors and where the interest of justice demands." To downgrade, the judge must be clearly convinced that the mitigating factors substantially outweigh the aggravating factors, the interests of justice must be compelling, and in addition to the mitigating factors, there must be something extra, which points to downgrading the offense. State v. Megargel, 143 N.J. 484, 504-05 (1996).

The judge rejected defendant's request to reduce his sentence a degree lower because there were no mitigating factors which substantially outweighed the aggravating factors, and the interest of justice did not demand a downward sentence. The judge's finding is supported by the record and should not be disturbed.

In sum, defendant's sentence was consistent with our sentencing guidelines in the New Jersey Code of Criminal Justice. The sentence is neither shocking nor manifestly excessive. Accordingly, we discern no basis to second-guess the sentence.

V.

Finally, in Point VI, defendant contends the cumulative errors—rulings from pre-trial through sentencing—warrant reversal of his convictions or remand for trial or resentencing. We disagree.

When multiple errors are alleged, "the predicate for relief for cumulative error must be that the probable effect of the cumulative error was to render the underlying trial unfair." State v. Wakefield, 190 N.J. 397, 538 (2007). However, even where a defendant alleges multiple errors, "the theory of cumulative error will still not apply where no error was prejudicial and the trial was fair." State v. Weaver, 219 N.J. 131, 155 (2014). Given our conclusions that defendant has failed to demonstrate there were prejudicial pretrial and trial errors, there was no cumulative effect that denied defendant a fair trial.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4407-18